### ESTHER A. RANDALL v. GEORGE C. RANDALL.

*Contract Between Husband and Wife based upon her Relinquishment of Support after Voluntary Separation.*

Findings are presumed to be warranted by evidence where the record does not affirmatively show that the evidence is all returned.

A husband and wife can contract with each other when the contract is not precluded by public policy.

It is not the policy of the law to favor the separation of husband and wife with or without divorce.

A contract between husband and wife will not be sustained when likely to favor a separation that has not yet taken place.

When a husband and wife have fully decided to separate, a contract between them that does not spring from fraud or coercion, and contemplates a suitable provision for the wife and children by an equitable division of the property, is maintainable.

In an action between a husband and wife on a contract between them, equity will, whenever needful, give effect to provisions in behalf of the wife by adjudging the husband to be her trustee and requiring him to account accordingly.

In the enforcement of a wife's contracts with her husband in regard to her separate estate, it is not necessary in Michigan that she be represented by a trustee.

A wife's release of her dower and homestead interests and her undertaking to support herself, are a valid consideration for a deed from her husband to herself.

It is a legal presumption that a wife's services and the comfort of her society are fully equivalent to any obligations which the law imposes on her husband because of the marital relation.

A wife's obligation to render family services is co-extensive with her husband's to support her in the family.

A husband's obligation to support his wife apart from him can only arise from his turning her out of doors or being guilty of such misconduct as would justify her in leaving him.

The nominal consideration in a deed from a husband to his wife was $1,000; the actual consideration was her relinquishment of her right to support. *Held*, that in the absence of any showing that she was entitled to support apart from him, this meant support within the family, which is presumed to be compensated by the wife's services and society, and cannot be accurately estimated in money, and therefore that the nominal consideration is in the nature of stipulated damages, and is conclusive in an action for a breach of the covenants of the deed.

Case made from Oakland. Submitted October 19. Decided November 1.

ASSUMPSIT. The facts are in the opinion.

*R. A. Parker* and *C. I. Walker* (on briefs) for plaintiff. Evidence of the yearly value of a woman's support is proper in an action by her for the breach of the covenants in a deed to her from her husband in consideration of her relinquishment of her right to support, *McIntyre v. N. Y. C. R. R. Co.*, 47 Barb., 515; *How v. How*, 48 Me., 428; *McHenry v. Yokum*, 27 Ill., 160. In an action based upon the surrender of her dower right to a third party for her husband's benefit, she could give evidence of its value, *Sykes*

*v. Chadwick*, 18 Wal., 141.    If a husband and wife agree to separate, the husband's agreement to provide for her support will be sustained when made through the intervention of a trustee, and when there is a covenant to indemnify the husband against the wife's debts, *Wilson v. Wilson*, 1 H. L. Cas., 572, s. c., 5 Id., 50; 2 Story's Eq. Jur., § 1428; 2 Roper's Husb. & Wife, 267–9; 1 Bish. Mar. & Div., §§ 636, 641–2, 650, 652, 656; Schouler's Dom. Rel., 294; 1 Pars. Cont., 357–8; and in equity, without a trustee, where the consideration is a separate interest of the wife, given up for the husband's benefit, and is reasonable and just, *Legard v. Johnson*, 3 Ves., 352; *Guth v. Guth*, 3 Bro., C. C., 614; *Thomas v. Brown*, 10 Ohio St., 247; *Miller v. Miller*, 16 Ohio St., 527; *Dutton v. Dutton*, 30 Ind., 452; *Livingston v. Livingston*, 2 Johns. Ch., 539, and a covenant against the wife's debts is unnecessary when the contract is made directly with the wife, *Baker v. Barney*, 8 Johns., 72; *Mizen v. Pick*, 3 M. & W., 481.    Where a separation has taken place or is about to, a conveyance by the husband to the wife making provision for her maintenance is valid and enforceable either at law or in equity, *Fox v. Davis*, 113 Mass., 257; *Calkins v. Long*, 22 Barb., 97; *Wallace v. Bassett*, 41 Barb., 92; *Griffin v. Banks*, 37 N. Y., 621; *Lehr v. Beaver*, 8 W. & S., 102; *Reed v. Beazley*, 1 Blackf., 97; *Bettle v. Wilson*, 14 Ohio, 257; *Goddard v. Beebe*, 4 Greene (Ia.), 126. It has been sometimes held that such conveyances can be made only through trustees, *Marshall v. Rutton*, 8 T. R., 545; *Bogget v. Frier*, 11 East, 301; *Lewis v. Lee*, 3 B. & C., 291; *Beach v. Beach*, 2 Hill, 260; *Simpson v. Simpson*, 4 Dana, 141, but there is high authority the other way, *More v. Ellis*, (1725) Bunb., 205; *Robertson v. Robertson*, 25 Ia., 350; *Hiram v. Griffin*, 8 Bush., 262; *Innell v. Newman*,, 4 B. & Ald., 419, and such a conveyance is valid in Michigan, *Burdeno v. Amperse*, 14 Mich., 91.    It may be shown in order to affect the damages in an action on a covenant of warranty, that the real consideration is greater or less than the amount named in the deed, *Bingham v. Weiderwax*, 1 Comst., 514;

*Belden v. Seymour*, 8 Conn., 304; *Bullard v. Briggs*, 7 Pick., 533.

*Aug. C. Baldwin* for defendant. A contract for separation and support, or for division of property, between husband and wife, is void, *Scarborough v. Watkins*, 9 B. Mon., 545; *Ingham v. White*, 4 Allen, 412; *Carley v. Green*, 12 Allen, 104; *Chapman v. Kellogg*, 102 Mass., 246; *Bassett v. Bassett*, 112 Mass., 99. A husband and wife cannot contract with each other without the intervention of a trustee, *Resor v. Resor*, 9 Ind., 349; *Jackson v. Parks*, 10 Cush., 550; *Sweat v. Hall*, 8 Vt., 187; 1 Cooley's Bl. Com., 441 and notes. The Michigan Married Woman's Act does not take from the husband his marital rights except as they pertain to property, nor relieve him from responsibility except as to his wife's contracts and debts; he must support her and is entitled to her services. *Snyder v. People*, 26 Mich., 106.

COOLEY, C. J. This is an action for the breach of a covenant against encumbrances contained in a conveyance of lands. The parties are husband and wife. The declaration contains two counts, the first of which avers that on the eighteenth day of March, 1871, the plaintiff was the lawful wife of the defendant, and as such was living with him upon a homestead owned and occupied by them; that the defendant at that time desired that the plaintiff should for the future live wholly separate and apart from the defendant, and declared to the plaintiff that he would not thereafter live with her as her husband, and the plaintiff having theretofore agreed to live separate and apart from the defendant, thereupon, in consideration that the plaintiff relinquished and gave up all her rights to be supported and maintained by the defendant, and also then and there executed and delivered to the defendant warranty deeds of the homestead and of other real estate, which homestead and other real estate was of the value of $8,000, he, the defendant, executed and delivered to her the conveyance in question. The second count is similar to the first except that it omits the relinquishment of the right to support in stating the con-

sideration of the conveyance.    Breach, that the land conveyed was not free from encumbrances, as covenanted, but was subject to a mortgage to one Elijah Lee for one thousand five hundred dollars and interest, which the plaintiff had been compelled to pay.

The cause was tried by the circuit judge without a jury, and the following is his finding of facts:

In this case the following facts are found by the court:

1st. That the parties are husband and wife, and were married in March, 1841, and cohabited together until about March 18th, 1871.

2d. That the defendant owned a farm of eighty-two acres near the village of Birmingham, Oakland county, Mich., which the parties occupied as a homestead, and also about seven acres of land in Southfield, and a brick store and lot in said village of Birmingham, said store and lot being the land in question.

3d. That the plaintiff had no interest in the said real estate, except as the wife of the defendant, and the occcupancy of said farm of eighty-two acres as their homestead.

4th. That on the eighteenth day of March, 1871, the defendant executed to the plaintiff a warranty deed with full covenants of said store and lot in Birmingham, with a consideration named therein of one thousand dollars, copy of which deed is annexed and made part of this finding, and upon which deed this suit is brought.    Also another warranty deed of seven acres of land in Southfield, and assigned to plaintiff a claim against Horace Randall of one hundred and sixteen dollars.

5th. Said plaintiff executed to said defendant two warranty deeds, which two warranty deeds embrace the farm of eighty-two acres aforesaid.

6th. That all said deeds were drawn by O. W. Hewett, a notary, at the request of said defendant, and subsequently delivered by said Hewett to said defendant, and the deeds from said defendant to said plaintiff were found duly recorded, and were produced by plaintiff on the trial.    I therefore find that said deeds were delivered to said plaintiff by said defendant.

7th. That prior to the making of said deeds, said defendant went to Hewett, a scrivener or notary public, with four deeds, and instructed him to draft the aforesaid deeds, and told Hewett that he and his wife had agreed to separate, and were going to divide the property.    I therefore find as a fact that a short time prior to the eighteenth

day of March, 1871, the parties agreed to separate and live apart.

8th. That after the execution of the said deeds, on Saturday, the eighteenth day of March, 1871, all the conversation between the parties was this: The plaintiff on that day asked the defendant if she could remain in the house upon the farm where the parties lived until the following Monday, and he replied that she could, and she did so remain.

9th. That on Monday, the 20th day of March, 1871, the plaintiff left the residence of defendant aforesaid, and since that time has lived separate from him, the defendant; and the defendant has since contributed nothing for the support of the plaintiff.

10th. That at the time of the execution of said deeds, the said brick store and lot were subject to a mortgage executed by William Lowes and his wife, to Elijah Lee, for one thousand five hundred dollars, with interest at seven per cent., and the same was due January 16, 1873. Said mortgage provided that should any default be made in the payment of said mortgage, the said party of the second part was empowered and authorized to sell and convey said premses, with appurtenances thereto belonging, at public vendue, pursuant to the statute in such case made and provided. And said mortgage contained a further condition that, should any proceedings be taken to foreclose it, an attorney fee of twenty-five dollars should be paid, in addition to all other legal costs.

11th. That the said defendant on the first day of March, 1871, made a contract with one Albert Putnam for a sale of a portion of the lot included in defendant's said deed to the plaintiff; which said contract was afterwards, on the 18th day of March, 1871, assigned to plaintiff by said defendant, and she received the proceeds from said contract by payment on said mortgage.

12th. That the said plaintiff paid said mortgage, as follows:

1st. December 16, 1871, payment of money received on the said Putnam contract, seven hundred and thirty-eight dollars and seventy-nine cents. And also on the same day paid two hundred dollars, making a sum total paid December 16, 1871, of nine hundred and thirty-eight dollars and seventy-nine cents.

2d. That on the 23d day of January, 1873, the mortgagee commenced the foreclosure of said mortgage by advertisement in the Pontiac Gazette, and that thereupon the said

plaintiff, on the 31st day of March, 1873, paid the balance due on said mortgage, to wit: The sum of seven hundred and nineteen dollars and sixty-eight cents.

And also the printer's bill for advertising of twenty-nine dollars and forty cents, and the attorney fee of twenty-five dollars. The sum total paid March 31, 1873, seven hundred and seventy-four dollars and eight cents.

13th. That I find there was no money consideration paid by the plaintiff to defendant for said deeds, but that the consideration was hereinafter stated, and that the parties had separated and lived apart since March 20, 1871, and that the plaintiff had since supported herself.

14th. That plaintiff was born on the 24th day of May, 1819, and that her expectation of life, when such separation took place was 19 years, and that the value of her support would be three hundred dollars per annum, and that the gross value of such annual support is more than equal to the amount she has paid on account of the mortgage in question upon said real estate.

15th. That the evidence of the contract for support consisted in the acts and relation of the parties and in the declarations made by defendant, that he had given the plaintiff sufficient for her support; that it was done for the purpose of dividing the property; and that the conveyances to her were given her to enable her to take care of herself. Those declarations were not made in plaintiff's presence, nor with her agents, but individuals with whom defendant was casually conversing before and after the execution of the deeds. But there was no evidence to the contrary, and I therefore find as conclusions of fact from such evidence, that the purpose of said transfer from defendant to plaintiff, and that the agreement between them was to divide the aforesaid property, and to provide for the future support of the plaintiff, and to relieve the defendant therefrom, and that the real consideration of said conveyances and assignment from defendant to plaintiff declared upon was the aforesaid division of the property and the undertaking of the plaintiff to support herself, and relieve the defendant therefrom, and that the value of such consideration is greater than the amount the plaintiff has paid upon the mortgage in question.

2nd. The consideration named in the said deed of the seven acres, which was three hundred dollars and the account from Horace Randall assigned to her by defendant.

Findings of law were requested by the defendant as follows:

37 MICH.—72.

1st. That any contract for a separation between husband and wife is void as against public policy.

2d. That a husband cannot make a contract to be performed thereafter that will be binding upon either, and upon which an action may be predicated.

3d. That the wife cannot sue the husband upon the covenants of a deed based upon a separation.

4th. That unless a consideration be proven, the plaintiff cannot recover more than the named consideration and interest.

The following were the findings made:

1st. I find that the undertaking to divide the property, and the agreement by the plaintiff to maintain herself and relieve defendant therefrom, having been carried out in good faith, is a good and valid consideration for defendant's undertakings, and covenants in said deed declared upon.

2d. I find as follows in response to the requests for findings of law submitted by defendant:

1st. That the first request is based upon an assumed finding of facts not true, and that the agreement counted on and found is based upon support alone, and division of the property.

2d. This request is disposed of by the same manner and for the same reasons.

3d. This point does not arise in the case, and it is not necessary to decide it.

4th. Plaintiff has proven another and different consideration from that named in said deed, which exceeds in value the whole amount she has paid on the mortgage, and I find, therefore, that she is not restricted to the amount of consideration named in the deed declared on.

5th. I do not find the facts as assumed in this request. I find as the law that when a husband and wife agree to separate, and therefrom the husband makes provision for the wife's support, and the wife undertakes to support herself, such undertaking may be a good and valid consideration for the husband's contracts, and they may be enforced.

6th. I therefore find that the defendant did assume and promise, as the said plaintiff has in her declaration alleged, and I find her damages are two thousand one hundred and twenty-four dollars and fifty-three cents.

I. Several exceptions are taken to the findings of fact as being without evidence to support them, but as the record does not affirmatively show that all the evidence was returned,

we cannot consider these.    We must assume that the evidence warranted the finding, and have only to see whether the findings of law are correct deductions from the facts.

II.   It is said that the agreement set out in the plaintiff's declaration is void in law.    In support of this position cases are cited which decide that at common law the husband and wife cannot contract with each other.    This is true as a rule, though we apprehend there was never any impediment to their dealing with each other on the basis of contract, when no consideration of public policy precluded it; in other words, when the occasion required it, and when the contract in view of the relations of the parties was one proper and suitable to be made.    On this point we might content ourselves with a reference to the leading case of *Shepard v. Shepard,* 7 Johns. Ch., 57, the principle of which was recognized in *Farwell v. Johnston,* 34 Mich., 342.    We shall add to these only the following American cases, all of which support the same doctrine : *Bradford v. Goldsborough,* 15 Ala., 311; *Hunt's Adm'r. v. Dupuy,* 11 B. Mon., 282; *Powell v. Powell,* 9 Humph., 477; *Wells v. Wells,* 35 Miss., 638; *Caldwell v. Bower,* 17 Mo., 564.

The chief difficulties with such contracts are encountered when they undertake to provide for a separation of the parties and a breaking up of the marriage either with or without a divorce.    It is not the policy of the law to encourage such separations, or to favor them by supporting such arrangements as are calculated to bring them about.    It has accordingly been decided that articles calculated to favor a separation which has not yet taken place will not be supported; *Durant v. Titley,* 7 Price, 577; *St. John v. St. John,* 11 Ves., 526; *Westmeath v. Westmeath,* Jac., 126. But when a separation has actually taken place, or when it has been fully decided upon, and the articles contemplate a suitable provision for the wife and children, or an equitable and suitable division of the property, the benefits of which both have enjoyed during the coverture, no principle of public policy is disturbed by them; on the contrary, if they are fair and equal, and are not the result of fraud or coercion, reasons abundant may be found for supporting them, in

their tendency to put an end to controversies, to prevent litigation, and to give to the wife an independence in respect to her support which without some such arrangement she could not have under the circumstances. The cases are too numerous for citation where such arrangements have been supported, and we only refer to a few of the many which both in England and in this country have settled the law beyond further controversy. *Compton v. Collinson*, 2 Bro. Ch., 377; *Worrall v. Jacob*, 3 Meriv., 266; *Jee v. Thurlow*, 2 B. & C., 547; s. c., 4 D. & R., 11; *Blaker v. Cooper*, 7 Serg. & R., 500; *Hutton v. Duey*, 3 Penn. St., 100; *Dillinger's Appeal*, 35 Penn. St., 357; *Nichols v. Palmer*, 5 Day, 47; *Baker v. Barney*, 8 Johns., 73; *Shelthar v. Gregory*, 2 Wend., 422; *Carson v. Murray*, 3 Paige, 483; *Chapman v. Gray*, 8 Ga., 341; *Wells v. Stout*, 9 Cal., 494; *Gaines v. Poor*, 3 Met. (Ky.), 503; *Walker v. Walker's Ex'r.*, 9 Wall., 743. In some of these cases the articles have been enforced against the husband or his estate, and in others against the wife or her estate, and although a trustee for the wife has been usually provided for by the articles, in whose name suits on her behalf might be brought, it was long ago determined that this was wholly unnecessary, and that equity, whenever it became needful, would give effect to provisions on her behalf by adjudging the husband to be her trustee and requiring him to account accordingly. *Wallingsford v. Allen*, 10 Pet., 583; *Garver v. Miller*, 16 Ohio St., 527; *Houghton v. Houghton*, 14 Ind., 505. It would certainly be unnecessary in this State, where the wife has full authority to make contracts in respect to her individual property, which includes authority to make contracts to acquire property. *Tillman v. Shackleton*, 15 Mich., 447.

III. There being nothing, then, in the law, to constitute an impediment to such an arrangement as is set out in the declaration, the deed to the wife must be supported if a sufficient consideration appears. The judge finds as considerations *first*, the release of the wife's dower and homestead interests, and *second*, her undertaking to support herself. The first is sufficient if the release was valid. *Low v.*

*Carter*, 21 N. H., 433; *Searing v. Searing*, 9 Paige, 283; *Lewis v. Caperton*, 8 Grat., 148. The release was perfectly good in equity, whether it was in law or not. If she had authority to bargain for the land, she had authority to agree upon the consideration. Her undertaking to support herself was also a valid consideration. It may be that this would not release him from his obligation to the public, to see that under no circumstances, while he had ability to prevent it, should she become a public charge, but the agreement would protect him against any claim made on her behalf; and this was probably all that was contemplated.

IV. There remains to be considered one question of no little difficulty. The consideration in the deed to the plaintiff was stated at one thousand dollars. The mortgage on the land, with interest, amounted to twice that sum. To enable the plaintiff to recover this she was permitted to show that the value of her support was three hundred dollars a year, and the judge so finds. His deduction from this fact is, that as her probability of life was nineteen years, the real consideration for the conveyance made in relinquishment of her right to support was considerably more than the amount of the mortgage. The method adopted by the circuit judge to arrive at his facts will appear by some of the questions which, under objection, he suffered to be put to witnesses. Thus, Mr. Utter was asked: "What in your opinion would be the yearly value of the support of a woman like Mrs. Randall, in their circumstances, without considering what she would earn?" Answer: "I should think it was worth from $300 to $350 a year." Mr. Toms was asked: "What in your opinion would be the cost or value of keeping a woman like Mrs. Randall?" Answer: "I should think $350 would be as low as it could be done for." Now this evidence seems to us wholly without warrant, and all deductions from it consequently baseless. What authority is there for assuming that this woman was entitled to a support from her husband without rendering any return therefor in services? No decision is cited in support of such an assumption, nor are we aware of any. The law does not assume that the wife will be a burden on her husband to the full

extent of all her support will cost; on the contrary the legal presumption is that her services and the comfort of her society are of a worth to him fully equal to all the obligations which the law imposes upon him because of the marital relation. Any other view is degrading to woman and to marriage itself.

Such questions as are above given must have been allowed on a supposition that the wife had already established her right to a support in a state of separation from the husband; but such is not the case. She had shown only an agreement to release her husband from the obligation to support her; but this obligation was to support her in his family and not elsewhere; and coextensive with it was her obligation to render family services. An obligation on his part to support her elsewhere could only arise by his turning her out of doors, or by his being guilty of such misconduct as would justify her in leaving him. Neither the one nor the other appeared in this case, and the support which constituted the subject of negotiation between the parties, and the right to which the plaintiff relinquished, was the support the husband was then compelled to furnish; namely, a support in his own home where he would have her assistance. And when she relinquished the right to a support, he also, as a part of the same arrangement, relinquished his right to her services. It is immaterial that he had, as she avers, declared he should not live with her. He had not turned her away, and their bargaining was with reference to an adjustment of rights which they then mutually possessed, and for a rearrangement in view of their difficulties. And it should be mentioned here that no foundation was laid for an inquiry on this subject of support, by showing that the wife was an invalid, or otherwise disabled from rendering the usual services of the head of the household.

Our conclusion is that both the evidence and the deduction from it were unwarranted. The correct view to take of this transaction as it seems to us, is this: The consideration for the conveyance to the plaintiff embraced matters which were incapable of any accurate estimate in money,

and the consideration named by the parties must therefore be taken and deemed to be the valuation placed upon it by themselves. No court could have any safe or reliable data by which to be guided in making an estimate, and from the very nature of the case it must be assumed that the sum named by the parties was intended to preclude any subsequent inquiry on that subject. It is in the nature of stipulated damages, beyond which we cannot go in case of breach of any of the covenants contained in this conveyance.

These views require a reduction of the judgment to the sum of one thousand dollars, with interest from the time this suit was commenced. The defendant is entitled to the costs of this court, and the plaintiff to the costs of the circuit court.

CAMPBELL and GRAVES, JJ., concurred.

MARSTON, J., did not sit in this case.