## CLARISSA S. RHOADES v. ALVIN C. DAVIS.

*Release of dower—Construction of statute.*

A married woman's release, to her husband, of her dower right, if made for a good consideration and without fraud or improper dealing, is binding, in view of the Married Woman's Act permitting wives to dispose of their interests as if single.

An empowering statute does not necessarily imply that the power given did not exist before.

Error to Kent. (Montgomery, J.)  June 20.—Oct. 3.

EJECTMENT. Defendant brings error. Reversed.

*Morse, Wilson & Trowbridge* for appellant  A wife's agreement, on separating from her husband and on adequate consideration, to give up her dower, is valid: *Stephenson v. Osborne* 41 Miss. 119; *Hitner's Appeal* 54 Penn. St. 110; *Dillinger's Appeal* 35 Penn. St. 357; *Thomas v. Brown*

10 Ohio St. 247; *Osgood v. Norris* 21 N. H. 435; *Bullard v. Briggs* 7 Pick. 533; *Powell v. Powell* 9 Humph. 477; *Blake v. Blake* 7 Ia. 46; *Robertson v. Robertson* 25 Ia. 350; *McKee v. Reynolds* 26 Ia. 589.

*Thos. J. O'Brien* and *Edward V. Raynolds* for appellee. A wife's release of dower by separate deed, executed long after conveyance by her husband, does not bar her right of dower: *Powell v. Monson &c. Mfg. Co.* 3 Mas. 347; *Page v. Page* 6 Cush. 196; *Dodge v. Aycrigg* 12 N. J. Eq. 82; *Savage v. Crill* 19 Hun 4; 2 Scribn. Dower 271; *Graham v. Van Wyck* 14 Barb. 531; *Crain v. Cavana* 36 Barb. 410; a wife can release her dower only by joining in her husband's deed: *Ulp v. Campbell* 19 Penn. St. 361; an inchoate dower right is a mere contingent claim, which may be released but cannot be granted or assigned, and can be diverted by legislation: *Green v. Putnam* 1 Barb. 500; *Moore v. Mayor* 8 N. Y. 110; a covenant for good consideration to release dower, is void: *Rowe v. Hamilton* 3 Greenl. 63; *Carson v. Murray* 3 Paige 483.

GRAVES, C. J. Ejectment for dower. Findings by the court, and judgment for the plaintiff.

In 1865 the plaintiff intermarried with John Rhoades, and they lived together from that date until the 12th of September, 1870, at which time they separated, and never afterwards cohabited. At this time the husband was owner in fee of the premises in the declaration, but owned no other. On the day of the separation the plaintiff gave the husband a quitclaim deed of the premises, and he paid her $250, and gave her a mortgage on the same premises for $650 more. The deed was placed on record a few days later. About two and a half months afterwards, and on the 25th of November, they entered into written articles of separation, and she therein agreed that the $900 which had been in part paid and in part secured by the mortgage should be " in full satisfaction for her support and maintenance, and all alimony whatever." At the same time, and as part of the same transaction, they added to

the consideration clause of the deed this language: " The consideration of this deed being in lieu for the right of dower of said party of the first part in and to said described premises," and the deed as thus changed was again recorded in December, 1870. The $900 mentioned in the articles, and of which $650 was secured by mortgage, formed the consideration of the quitclaim.

January 23d, 1872, the husband conveyed to the defendant, subject to the mortgage, the plaintiff not joining. The defendant assumed what remained of the mortgage debt as part of the purchase price, and paid it to the plaintiff's assignee. July 3d, 1878, the husband died, and the plaintiff commenced this suit April 16, 1881. At the time the deed and mortgage were given, in September, 1870, the plaintiff had no right except her expectancy of dower as the wife of John Rhoades. The construction of the facts is not difficult. The husband held the premises subject to plaintiff's incipient dower right. For $900 which she has received in full, she agreed to waive her right and place the title in such shape that the property should be grantable by the husband as though she were not living. On this basis the husband paid and secured the consideration, and on this basis she deeded as before stated. The title being in this condition, the defendant purchased of the husband and accepted his sole deed, and assumed and paid what remained of the mortgage given on the premises to secure a portion of the very consideration for which she agreed to resign the right that she now endeavors to enforce.

The question is whether, on these facts, she may now repudiate her part of the arrangement, and not only hold the benefit of the consideration she obtained, but may also recover the very thing for which she solemnly accepted that consideration as the price. If she can, it must be because there are technical difficulties too stubborn to yield to the claims of natural justice. The moral dictates of the law are all against her. Her position is—*first*, that before the legislation of 1855 it was not possible for a married woman, by giving a deed to her husband, to relinquish to

him her incipient right of dower in his lands; *second*, that this right not being, as is well settled, a separate estate, its disposal has not been affected by that legislation. Consequently the deeding by the plaintiff made no change in her legal claims and interests. The view which the case offers will excuse examination of the first point. Whether the method of barring dower which the statute approves by joining in the husband's deed or with the guardian, or by her sole deed to a third person, who has obtained the husband's title, should be deemed exclusive where the case does not depend on an act of relinquishment directly to the husband, may be left for future inquiry.

The second proposition demands some attention; it seems to have the support of a dictum in *Ring v. Burt* 17 Mich. 465. It was there said that a married woman during the coverture could not affect this right except by joining in a deed or mortgage with her husband. This was not the point in judgment, and the remark was only a casual observation in the course of argument. However entitled to respect as the expression of an eminent judge, the Court cannot regard it as an adjudication.

The first consideration is, what, in the light of reason, is this "possibility of dower accruing to the wife after marriage, but before the death of the husband?" The authorities universally deny that it constitutes an estate; at the same time they admit, with equal unanimity, that it is a right concerning land, and one which possesses value. In *Greiner v. Klein* a majority of this Court were of opinion that it was of such worth that a sale in partition would not bar it, unless the wife were a party to the suit. 28 Mich. 12. Again, in *Farwell v. Johnston* 34 Mich. 342, and in *Bissell v. Taylor* 41 Mich. 702, it was ruled unanimously that the right was salable by the wife, and had sufficient purchasing power to supply a legal consideration for a conveyance to her. And in *Randall v. Randall* 37 Mich. 563, it was determined that the right was of such nature that the wife, by deeding directly to the husband, might work an equitable sale of it, whereby to furnish a consideration capable of

upholding a grant to herself.    See also *Miller's Ex'r v. Miller* 16 Ohio St. 528; *Wilson v. Wilson* 1 H. L. Cas. 538.

Here, then, is something belonging to the wife which she may part with or retain.    It possesses a money value, and may be the object of sale and release.    It is capable of being dealt with as property.    The statutes and the decisions recognize it as property.    True, it cannot be shifted from one to another without reference to the repository of the general title.    The nature of the thing forbids it.    The only point here is whether the husband, who holds the land subject to this right, may not continue and at the same time receive directly from his wife a release by deed, provided the transaction is supported by a satisfactory consideration and is in all respects fair and reasonable.    If the question were in equity and subject to be adjudged by the long-settled principles on which rights and titles are there founded and enjoyed, and by which their use and disposal are regulated, the result would neither be novel nor uncertain.    The release would operate as a bar in equity.    But the inquiry arises on the other side of the court.    It is a question of law.    And until the Act of 1855 it was the general doctrine of the courts of common law that the wife was not capable of enjoying and disposing of her own property at her own election, and moreover that the married pair could not contract directly with each other.    The subject is quite fully explained in *Burdeno v. Amperse* 14 Mich. 91.    But that statute made a great change.    It provided that coverture should in nowise disable the wife from selling what was her own, nor in any manner interfere with her disposal of it.    No distinction is made between kinds of property.    The language takes in all without exception. Now, since the right in question is her property, and is a legitimate subject of sale, why may she not part with it in point of law to whomsoever holds the title to which it is germane?    And since husband and wife may now by the rules of law, as well as those of equity, make mutual contracts with regard to property, and sell and deed to each other (*Burdeno v. Amperse* supra; *Ransom v. Ransom* 30

Mich. 328,) why may she not sell and release directly to her husband ?

No reason is perceived that would not infringe the spirit of the legislation of 1855. By means of that enactment the faculty to transact, and the fact transacted, which were antecedently pure matters of equity, were legitimated at law and clothed with the attributes of law. The consequential effect of the act of release upon the future of the right can present no objection. That the act in which she parts with the right, and so disposes of it, does at the same time determine it, is not an obstacle. These consequences are the due expressions of opposite sides of the same fact. The object aimed at is to cause a cessation of the right, and not an existence of it in new hands. The sale being made fairly, and in accordance with the dictates of equity, and regularly carried out by deed on one side and exemplary performance on the other, the transaction operates by way of release of the right, in contemplation of law, and implies an obligation not to reassert it.

It is very naturally suggested that this view is not consistent with the opinion which the Legislature is presumed to have entertained when they passed the Act of 1877 providing that the wife might bar her dower by her separate deed to whomsoever was the holder of the husband's title. Act No. 65, Pub. Acts, 1877. If the wife, it is said, was already able to dispose of this right by her sole deed, it was needless to re-enact authority for her. This argument is not without force, but it is not controlling. The principles which underlie the case will not submit to it. It has happened here, as in some other instances in the history of legislation, that the Legislature has proceeded on an inaccurate opinion of the true meaning and proper scope of an existing law. *Talbot v. Seeman* 1 Cranch 1–35 ; *Postmaster General v. Early* 12 Wheat. 136–148 ; *Jackson v. Phelps* 3 Caines 62–68, 69, per Kent, C. J.; *Mersey Docks v. Cameron* 11 H. L. Cas. 443–518 ; *Van Norman v. Circuit Judge* 45 Mich. 204. According to these views the circuit court should have entered judgment for the defendant.

The judgment should be reversed, and one entered here for the defendant, with the costs of both courts, and the case should be remanded for such further proceedings respecting a new trial under the statue as may be lawful.

The other Justices concurred.